IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2012-0059 |
| | ) | DEPARTMENT B |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| KWAME ROY LOWERY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20103550001

Honorable John S. Leonardo, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani, Joseph T. Maziarz,
  and Nicholas Klingerman                                    Tucson
                                              Attorneys for Appellee


Lori J. Lefferts, Pima County Public Defender
  By Michael J. Miller                                       Tucson
                                              Attorneys for Appellant


K E L L Y, Judge.

¶1          After a jury trial, appellant Kwame Lowery was convicted of failure to register as a sex offender. On appeal, he argues the state did not present sufficient evidence to support the jury's verdict; the trial court committed fundamental error by

allowing a detective's testimony interpreting Arizona's sex offender registration statute, A.R.S. § 13-3821; and the registration statute is facially unconstitutional and violates his right to equal protection. We affirm.

**Factual and Procedural Background**

¶2 We view the facts in the light most favorable to upholding the conviction. *See State v. Abdi*, 226 Ariz. 361, ¶ 2, 248 P.3d 209, 211 (App. 2011). In 2009, Lowery was convicted of criminal sexual conduct in Michigan pursuant to Mich. Comp. Laws § 750.520e(1)(b) and required to register as a sex offender in that state.

¶3 On September 21 and October 5, 2010, law enforcement officers had contact with Lowery in and around downtown Tucson. On one occasion, a detective discovered paperwork in Lowery's pocket indicating he had been in Tucson City Court on August 31, 2010. On October 6, Detective Cravatzo discovered Lowery was a convicted sex offender required to register in Michigan. That day, he located Lowery in downtown Tucson and interviewed him. Lowery told Cravatzo he had not registered in Pima County because he "ha[d]n't been here ten days yet," as required by § 13-3821. He stated he had been in Michigan "off and on" for the past year, and over the past five days had been in Phoenix, Albuquerque, and Sierra Vista before returning to Tucson on October 5. Lowery also told Cravatzo he did not remember being in Tucson on September 21—fourteen days earlier—when he had a contact with law enforcement.

¶4 Lowery was charged with failure to register as a sex offender. At the close of evidence in his trial, Lowery made a motion for a judgment of acquittal pursuant to

2

Rule 20, Ariz. R. Crim. P., arguing the state had provided insufficient evidence to support a guilty verdict. The trial court denied the motion. Lowery was convicted as charged and sentenced to a mitigated one-year term of imprisonment. This appeal followed.

**Discussion**

**Sufficiency of the Evidence**

**¶5**        Lowery argues the trial court erred by denying his Rule 20 motion because there was insufficient evidence he had "enter[ed] and remain[ed]" in Pima County for ten days as required to support a conviction under § 13-3821(A). To determine whether sufficient evidence supports a conviction, we evaluate whether "substantial evidence supports the jury's verdict[]." *State v. Lopez*, 230 Ariz. 15, ¶ 3, 279 P.3d 640, 642 (App. 2012). "'Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Id.*, *quoting State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996); *see also State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987) ("To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury."). The evidence may be either direct or circumstantial. *Lopez*, 230 Ariz. 15, ¶ 3, 279 P.3d at 642.

**¶6**        As Lowery concedes, the state presented evidence he had been in Pima County on August 31, September 21, October 5, and October 6, 2010—a period of time spanning more than a month. This constituted substantial evidence from which reasonable jurors could conclude Lowery had remained in Pima County for at least ten

days without registering as a sex offender. *See id.* And although Lowery testified he had not remained in Pima County between those dates, the jury was free to discredit his testimony. *Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, ¶ 12, 273 P.3d 645, 649 (2012) (jury may discredit defendant testimony for various reasons, including personal interest); *see also State v. Anaya*, 165 Ariz. 535, 543, 799 P.2d 876, 884 (App. 1990) (circumstantial evidence can support differing reasonable inferences). Therefore, sufficient evidence supports Lowery's conviction.

**Detective Testimony**

¶7 Lowery argues the trial court erred by permitting testimony from Cravatzo interpreting § 13-3821 because (1) pursuant to Rule 702, Ariz. R. Evid., a witness may not instruct the jury as to the proper interpretation of the law and (2) Cravatzo's interpretation of § 13-3821 was incorrect because he testified a person must register once he has remained for ten days in the state, rather than in a particular county. Because he failed to object to Cravatzo's testimony in the trial court, we review solely for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005). Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Id.* ¶ 19, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). Lowery must prove fundamental error occurred and "that the error in his case caused him prejudice." *Id.* ¶ 20.

¶8        Section 13-3821(A) states that persons required to register in Arizona must do so "within ten days after entering and remaining in any county of this state . . . with the sheriff of that county." During trial, the state solicited the following testimony from Cravatzo:

> Q: According to your training and experience, . . . once you are here for ten days you have to register?
>
> A: Yes, if you are traveling from another state, you have a ten day limit. . . .
>
> Q: Now is that within a particular county or is that within the entire State of Arizona?
>
> A: That's within the State of Arizona.

The state followed up by presenting hypothetical examples of a defendant moving between counties in the state, and Cravatzo explained he would determine whether the person was required to register based on his continuous presence in the state. Lowery did not object. However, in his closing argument, Lowery argued:

> [T]he law further says that you have to [register] within ten days after entering and remaining in Pima County. Well, Sierra Vista is not Pima County. Phoenix is not Pima County. Albuquerque is not Pima County.
>
> So although yes, Phoenix and Sierra Vista are within the State of Arizona, they are all different counties and a person could easily travel between them in a period of ten days' time.

The trial court instructed the jury the state was required to prove beyond a reasonable doubt that Lowery had "failed to register with the sheriff within ten days after entering

5

and remaining in Pima County." It also instructed the jury that "it is the Court's instructions on the law that control."

¶9 Even if the trial court erred by allowing Cravatzo's testimony, we do not reach that issue today because Lowery has failed to establish he was prejudiced by any error. Lowery argues we cannot conclude "beyond a reasonable doubt" that Cravatzo's testimony did not "contribute to the verdict." That would describe accurately the state's burden had Lowery objected in the trial court. *See Henderson*, 210 Ariz. 561, ¶ 18, 115 P.3d at 607. However, because he failed to do so, he bears an affirmative burden to prove prejudice. *See id.* ¶ 19. This is "to encourage defendants to present their objections in a timely fashion at trial, when the alleged error may still be corrected, and to discourage defendants from reserving a curable trial error as a 'hole card'" to be played on appeal. *State v. Davis*, 226 Ariz. 97, ¶ 12, 244 P.3d 101, 104 (App. 2010), *quoting Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

¶10 We presume the jury followed the trial court's instruction and determined the state had proven "the defendant failed to register with the sheriff within ten days after entering and remaining in Pima County." *See State v. Newell*, 212 Ariz. 389, ¶ 68, 132 P.3d 833, 847 (2006). Lowery has offered no evidence rebutting this presumption. *See State v. Munninger*, 213 Ariz. 393, ¶ 14, 142 P.3d 701, 705 (App. 2006) (mere speculation insufficient to show prejudice under fundamental error review). As discussed above, the state provided evidence Lowery had been in Pima County on occasions spanning more than ten days. And during closing argument, Lowery maintained the state

was required to prove his presence in Pima County specifically, as stated in the indictment and the jury instructions. Therefore, Lowery has failed to show any error was so prejudicial that he "could not possibly have received a fair trial." *See Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607; *see also Newell*, 212 Ariz. 389, ¶¶ 68, 70, 132 P.3d at 847, 848 (improper testimony not prejudicial in part because jury properly instructed).

**Equal Protection**

¶11        Finally, Lowery argues § 13-3821 is facially unconstitutional because it requires those who must register as sex offenders in other states to register in Arizona "even when people who commit the same offense in Arizona are not required to register." He contends this violates his state and federal constitutional right to equal protection because it treats disparately two similarly situated groups: those who commit an offense outside Arizona and are required to register, and those who commit the same act inside Arizona but are not required to register. We review the constitutionality of a statute de novo, and we presume statutes are constitutional unless established otherwise beyond a reasonable doubt. *State v. Navarro*, 201 Ariz. 292, ¶ 24, 34 P.3d 971, 977 (App. 2001). Lowery did not raise this issue in the trial court, and so we review for fundamental error. *See Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607. "To obtain relief under the fundamental error standard of review, [Lowery] must first prove error." *Id.* ¶ 23.

¶12        Section 13-3821(A) provides in relevant part:

> A person . . . who has been convicted of . . . an offense committed in another jurisdiction that if committed in this state would be a violation or attempted violation of any of the following offenses . . . or who is required to register by the

7

> convicting or adjudicating jurisdiction, . . . within ten days after entering and remaining in any county of this state, shall register with the sheriff of that county . . . .

Lowery contends his Michigan conviction does not establish a violation of any of the offenses listed in § 13-3821 and therefore he is required to register in Arizona only because he was required to register in Michigan. We agree. To prove his prior offense "if committed in this state would [have been] a violation" of an Arizona offense, the elements of the Michigan statute necessarily would have to prove the Arizona offense. *See State v. Kuntz*, 209 Ariz. 276, ¶ 9, 100 P.3d 26, 29 (App. 2004). However, § 750.520e(1)(b) prohibits conduct that would not require registration in Arizona—such as sexual abuse against an adult. *See* § 13-3821 (requiring registration for sexual abuse only when victim is minor); *compare* Mich. Comp. Laws § 750.520e(1)(b) (criminal sexual conduct includes any "sexual contact" through force or coercion), *with* A.R.S. § 13-1406(A) (sexual assault requires "sexual intercourse or oral sexual contact" without consent).[1]

**¶13** "The state and federal equal protection guarantees are designed to secure equal opportunity for those who are similarly situated." *Martin v. Reinstein*, 195 Ariz. 293, ¶ 49, 987 P.2d 779, 795 (App. 1999); *see also* U.S. Const. amend. XIV, § 1; Ariz. Const. art. II, § 13. The effects of the state and federal provisions "are essentially the same." *State v. Bonnewell*, 196 Ariz. 592, ¶ 15, 2 P.3d 682, 686 (App. 1999). However,

---

[1]The relevant portions of these statutes have not changed since the date of Lowery's prior offense. *See* 2007 Mich. Sess. Laws, no. 163, § 520e; 1999 Ariz. Sess. Laws, ch. 92, § 1.

the right to equal protection does not prohibit all classifications, only those that are unreasonable. *Schecter v. Killingsworth*, 93 Ariz. 273, 281, 380 P.2d 136, 141 (1963). Unless it implicates a suspect classification or a fundamental right, we will uphold legislation that is "'rationally related to a legitimate government purpose.'" *Navarro*, 201 Ariz. 292, ¶ 25, 34 P.3d at 977, *quoting Wigglesworth v. Mauldin*, 195 Ariz. 432, ¶ 19, 990 P.2d 26, 32 (App. 1999); *see also Governale v. Lieberman*, 226 Ariz. 443, ¶ 13, 250 P.3d 220, 225 (App. 2011) (same standard applies to state constitutional provision).

¶14　　　　Lowery urges us to examine the statute utilizing strict scrutiny review, rather than rational basis review, because it implicates his fundamental right to travel by "penaliz[ing] [him] for traveling to Arizona." But nothing in § 13-3821 impedes an offender's right "to enter and to leave another State, . . . to be treated as a welcome visitor rather than an unfriendly alien when temporarily present . . . [or] to be treated like other citizens of that State" as a new permanent resident. *See Saenz v. Roe*, 526 U.S. 489, 500 (1999); *cf. United States v. Shenandoah*, 595 F.3d 151, 162-63 (3d Cir. 2010) (federal Sex Offender Registration and Notification Act registration requirements do not implicate right to travel), *abrogated on other grounds by Reynolds v. United States*, 132 S. Ct. 975 (2012). The statute does not prevent any person from entering the state, does not place any requirements on short-term visitors, and applies to Arizona residents equally. According to its plain language, any person in Arizona who must register in another state is subject to the same requirements irrespective of how long they have resided in this

state. *See* § 13-3821. Therefore, we evaluate the statute's provision applying rational basis review. *See Navarro*, 201 Ariz. 292, ¶ 25, 34 P.3d at 977.

¶15 In examining the purpose of the statute, we may consider either the legislature's stated goal or any hypothetical basis for its action. *Governale*, 226 Ariz. 443, ¶ 16, 250 P.3d at 225-26. Prior to 2005, a person was not required to register based solely on another state's requirement to do so. Instead, § 13-3821 only required registration based on a conviction in another jurisdiction when the offense "if committed in this state would [have been] a violation or attempted violation" of an Arizona offense requiring registration. 2004 Ariz. Sess. Laws, ch. 142, § 2. As mentioned above, to make this determination, the trial court is limited to comparing the elements of the respective statutes and prohibited from considering the factual basis underlying the conviction. *Kuntz*, 209 Ariz. 276, ¶ 9, 100 P.3d at 29. As a result, even if the prior conduct generally would have required registration under Arizona law, one could evade registration if the elements of the respective statutes did not match. *See id.* ¶¶ 10-11 (defendant not required to register because some portions of Minnesota criminal sexual conduct statute broader than Arizona sexual assault statute).

¶16 The legislative history of § 13-3821 suggests the legislature was attempting to close this gap in the registration system when it amended the statute in 2005 to also require registration of those "required to register by the convicting jurisdiction." 2005 Ariz. Sess. Laws, ch. 176, § 1. The bill's sponsor noted the change "close[d] a technical loophole" in the law. H. Judiciary Comm. Minutes, 47th Leg., 1st reg. sess., (Ariz. Mar.

10

31, 2005). As one supporter noted during a committee meeting, cases such as *Kuntz* established that "[i]f the person had committed a heinous criminal sexual offense and the elements did not match exactly with one of Arizona's crimes, the person would not have to register when they moved to Arizona." *Id.*

¶17 As a practical matter, because statutes vary from state to state, registration requirements based on other states' convictions will be either over-inclusive or under-inclusive unless an Arizona court re-examines the facts underlying each prior conviction in the context of Arizona law. However, to do so would essentially require an impermissible "second trial concerning that crime." *Kuntz*, 209 Ariz. 276, ¶ 9, 100 P.3d at 29. And rational basis review does not require a perfect match between the treatment of in-state and out-of-state acts. *See Washburn v. Pima Cnty.*, 206 Ariz. 571, ¶ 28, 81 P.3d 1030, 1039 (App. 2003) (statute with rational basis not unconstitutional merely because not made with "'mathematical nicety, or because in practice it results in some inequality'"), *quoting Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 566, 789 P.2d 1061, 1067 (1990). Requiring those who must register in another jurisdiction to register in Arizona is rationally related to the state's legitimate interest in protecting its communities by ensuring its registration scheme is not under-inclusive. *See Martin*, 195 Ariz. 293, ¶ 61, 987 P.2d at 798 (state has "significant interest" in protecting citizens from dangerous individuals); *see also State v. Henry*, 224 Ariz. 164, ¶¶ 16-17, 228 P.3d 900, 905 (App. 2010) (intent of registration scheme to assist law enforcement and protect

11

communities).  Therefore, Lowery has not established that § 13-3821 is unconstitutional.

*See Navarro*, 201 Ariz. 292, ¶ 24, 34 P.3d at 977.

## Disposition

**¶18**         For the foregoing reasons, we affirm.

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge