IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————

THE STATE OF ARIZONA,
*Appellee,*

*v.*

CRAIG VICTOR COLEMAN,
*Appellant.*

No. 2 CA-CR 2015-0419
Filed November 22, 2016

———————————

Appeal from the Superior Court in Pima County
No. CR20123419001
The Honorable Howard Fell, Judge Pro Tempore

**AFFIRMED**

———————————

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Mariette Ambri, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By Michael J. Miller, Assistant Public Defender, Tucson
*Counsel for Appellant*

**OPINION**

Presiding Judge Howard authored the opinion of the Court, in which Judge Espinosa and Judge Staring concurred.

H O W A R D, Presiding Judge:

**¶1**  Following a jury trial, Craig Coleman was convicted of unlawful imprisonment of a minor under fifteen, aggravated assault of a minor under fifteen, assault, and burglary. On appeal, he argues the trial court violated his equal protection and substantive due process rights by requiring him to register pursuant to A.R.S. § 13-3821(A)(1) absent a jury finding the unlawful imprisonment was sexually motivated. Because we find no constitutional violation, we affirm.

**Factual and Procedural Background**

**¶2**  We view the facts in the light most favorable to upholding the jury verdicts. *State v. Haverstick*, 234 Ariz. 161, ¶ 2, 318 P.3d 877, 880 (App. 2014). In September 2012, C.B. was holding her three-year-old daughter, H.T., when Coleman entered her backyard, "grabbed the baby's arm" and tried to pull her away from C.B. Coleman punched C.B. in the face, causing her to fall down and on top of H.T. He punched C.B. again and then ran away.

**¶3**  Coleman was charged with kidnapping and aggravated assault as to H.T., aggravated assault causing temporary and substantial disfigurement as to C.B., and burglary. A jury found him guilty of unlawful imprisonment of a minor under fifteen as a lesser-included offense of kidnapping, but found the state did not prove it was committed with sexual motivation beyond a reasonable doubt. The jury also found him guilty of aggravated assault of a minor under fifteen, of assault of C.B. as a lesser-included offense of the aggravated assault, and of burglary.

**¶4**  The trial court sentenced Coleman to concurrent prison terms, the longest of which is 2.5 years. It also ordered him to

register pursuant to § 13-3821(A)(1) for a period of ten years. § 13-3821(A)(1), (M). We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A).

**Discussion**

**¶5** Coleman argues the trial court's order that he register pursuant to § 13-3821 violates his substantive due process and equal protection rights under the United States and Arizona constitutions. He reasons that subjecting him to § 13-3821's registration requirements and labeling him a "sex offender" when sexual conduct is not an element of unlawful imprisonment and the jury failed to find the crime was sexually motivated is not rationally related to the legislature's purpose in establishing the registry.

**¶6** Coleman raised his equal protection argument below, thus preserving it for review, but forfeited any review of whether his substantive due process rights have been violated except for fundamental, prejudicial error.[1] *See State v. Henderson,* 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005); *see also State v. Lopez,* 217 Ariz. 433, ¶ 4, 175 P.3d 682, 683 (App. 2008) ("objection on one ground does not preserve the issue on another ground"). However, under either standard of review, Coleman must first establish error occurred. *See State v. Katzorke*, 167 Ariz. 599, 600, 810 P.2d 597, 598 (App. 1990) (violation of equal protection reversible error); *see also State v. Avila*,

---

[1] The state asks us to ignore Coleman's substantive due process argument as not raised below, and contends that addressing it would turn this court into the "court of first resort for [constitutional] claims." Our supreme court, however, has established that appellate courts will consider constitutional claims raised for the first time on appeal, but our review is limited to determining whether fundamental, prejudicial error occurred. *See State v. Henderson,* 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). Because Coleman has argued that requiring him to register constitutes fundamental, prejudicial error, we will review his claim accordingly. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (review for fundamental, prejudicial error waived if not argued).

217 Ariz. 97, ¶ 9, 170 P.3d 706, 708 (App. 2007) (under fundamental error review, defendant must establish error occurred). We review issues of constitutional law de novo. *State v. Ramsey*, 211 Ariz. 529, ¶ 5, 124 P.3d 756, 759 (App. 2005).

¶7 The equal protection guarantees of the Arizona and United States constitutions "are essentially the same" and require similarly situated people be treated alike. *State v. Lowery*, 230 Ariz. 536, ¶ 13, 287 P.3d 830, 835 (App. 2012), *quoting State v. Bonnewell*, 196 Ariz. 592, ¶ 15, 2 P.3d 682, 686 (App. 1999); *see also* U.S. Const. amend. XIV, § 1; Ariz. Const. art. II, § 13. These guarantees do not prohibit all classifications, however, but only those which are "unreasonable." *Lowery*, 230 Ariz. 536, ¶ 13, 287 P.3d at 835.

¶8 Substantive due process ensures that the government's actions are fundamentally fair, "regardless of the fairness of the procedures used to implement them." *Martin v. Reinstein*, 195 Ariz. 293, ¶ 66, 987 P.2d 779, 800 (App. 1999), *quoting Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *see also* U.S. Const. amend. XIV, § 1; Ariz. Const. art. II, § 4; *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7-8 (2003) (statutory registration requirements question of "substantive, not procedural, due process"). It thus "prevents the government from engaging in arbitrary, wrongful actions." *Martin*, 195 Ariz. 293, ¶ 66, 987 P.2d at 800. "It precludes conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.*, *quoting United States v. Salerno*, 481 U.S. 739, 746 (1987).

¶9 Our review of equal protection and substantive due process claims are "conceptually" similar, with the level of scrutiny dependent upon the classification or right at issue. *Governale v. Lieberman*, 226 Ariz. 443, ¶ 13, 250 P.3d 220, 225 (App. 2011); *see also State v. Russo*, 219 Ariz. 223, ¶ 5, 196 P.3d 826, 828 (App. 2008). Coleman concedes he is not a member of a suspect class and no fundamental right[2] is at issue, and therefore "we will uphold the

---

[2] Because Coleman conceded no fundamental right was involved, he may not be entitled to any further fundamental error review as to any substantive due process violation. Nevertheless,

statute so long as it is 'rationally related to a legitimate government purpose.'" *State v. Panos*, 239 Ariz. 116, ¶ 8, 366 P.3d 1006, 1008-09 (App. 2016), *quoting State v. Navarro*, 201 Ariz. 292, ¶ 25, 34 P.3d 971, 977 (App. 2001). Rational basis review "is a paradigm of judicial restraint." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). And, in an equal protection review, the statute is presumed valid "if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Coleman must show "beyond a reasonable doubt [the statute is] wholly unrelated to any legitimate legislative goal." *Martin*, 195 Ariz. 293, ¶ 52, 987 P.2d at 796.

¶10 Coleman argues that requiring him to register is not rationally related to the goal of regulating sex offenders. But only under a strict scrutiny review would we need, first, to determine whether the legislature's specific purpose was exclusively to protect communities from known sex offenders and, second, whether requiring those convicted of unlawful imprisonment of a minor absent a finding of sexual motivation is narrowly tailored to that purpose. *Id.* ¶ 51. In a rational basis review, we need only consider whether the requirement is rationally related to "*any* legitimate legislative goal." *Id.* ¶ 52 (emphasis added); *see also Lowery*, 230 Ariz. 536, ¶ 15, 287 P.3d at 835 (in rational basis review, court may "consider either the legislature's stated goal or any hypothetical basis for its action").

¶11 Section 13-3821(A) prescribes which offenses require registration, the majority of which are sex-related. In 1998, the legislature amended § 13-3821(A) and added unlawful imprisonment and kidnapping of a minor by a non-parent to the list of offenses requiring registration. 1998 Ariz. Sess. Laws, ch. 291, § 2. It did not require a finding of sexual motivation. § 13-3821(A). Unlawful imprisonment requires the state to show the defendant "knowingly" restrained another person. A.R.S. § 13-1303(A). Thus, by the plain terms of § 13-3821(A)(1), a defendant convicted of unlawful imprisonment of a minor when the defendant is not the minor's

---

because the state did not argue this concession precluded review, and we find no error in any event, we do not decide this issue.

parent is required to register without any showing of a sexual component.

¶12 The legislature's only statement on the 1998 amendment was that it was meant to "[b]ring Arizona's sex offender registration and community notification laws into compliance with . . . the federal Jacob Wetterling Act" (JWA). Senate Fact Sheet, S.B. 1333, 43rd Leg., 2nd Reg. Sess. (July 7, 1998). We thus turn to the Congressional history of the JWA. *See People v. Johnson*, 870 N.E.2d 415, 425 (Ill. 2007) ("If Congress had a reasonable basis for requiring child abductors to register, it necessarily follows that legislation intended to bring New York into compliance with [the JWA] shares that basis."), *quoting People v. Cintron*, 827 N.Y.S.2d 445, 457 (Sup. Ct. 2006) (second alteration in *Johnson*).

¶13 When Congress was considering the JWA, one representative stated the law was necessary "because of the high rate of recidivism in persons who have committed crimes against children, and it is not just sex crimes against children but all crimes against children. The recidivism rate is probably higher in this area of our criminal justice system or in violations of the criminal code." 139 Cong. Rec. H10319-02 (daily ed. Nov. 20, 1993) (statement of Rep. Sensenbrenner). He noted that "time is of the essence" when a child is abducted, and a registry would enable law enforcement "to track down known child offenders to see if they were involved in an abduction or another crime against a child." *Id.* And a House Report cites a Department of Justice study estimating that "[t]wo-thirds of the cases of non-family child abduction reported to police involve sexual assault." H.R. Rep. No. 103-392 (1993).

¶14 The purpose of the JWA was thus "to protect [children and their families] from child abductors and molesters" and provide law enforcement "a resource for investigating child abduction and molestation cases." 140 Cong. Rec. H8968-01 (daily ed. Aug. 21, 1994) (statement of Rep. Ramstad). Consequently, requiring all non-parents convicted of unlawful imprisonment of a minor to register, even if the crime was not sexually motivated, is rationally related to the legislative goal of protecting minors from abduction and potential sexual harm. *See State v. Noble*, 171 Ariz. 171, 177, 829 P.2d 1217, 1223 (1992) (§ 13-3821 rationally related to aiding law

enforcement's investigative work); *see also Lowery*, 230 Ariz. 536, ¶ 17, 287 P.3d at 542 (§ 13-3821 rationally related to legitimate state interest in protecting communities); *Martin*, 195 Ariz. 293, ¶ 61, 987 P.2d at 798 (state has "significant interest in protecting its citizens from" dangerous individuals).

¶15 Coleman argues, however, the statute unfairly requires some defendants convicted of offenses without a sexual component or motivation to register, while others are not required to register. But Congress clearly found kidnapping and unlawful imprisonment of a child by a non-parent, in particular, had high risks of recidivism and an increased risk of future sexual harm to children. Thus, the choice to limit unlawful imprisonment and kidnapping of a minor by a non-parent as offenses requiring registration is neither arbitrary nor irrational. *See Panos*, 239 Ariz. 116, ¶ 9, 366 P.3d at 1009. On the contrary, it demonstrates the legislature's intent to limit the registration requirements to those offenses with high rates of recidivism and a high risk of sexual harm to children. Because the classification is rationally related to the state's legitimate interest, it does not offend equal protection guarantees. *See City of Cleburne, Tex.*, 473 U.S. at 439.

¶16 As support for his position that no rational basis exists for the registration requirement here, Coleman cites three out-of-state cases [3] in which courts found that requiring defendants convicted of either unlawful imprisonment or kidnapping of a

---

[3]Coleman additionally cites *Doe v. Moore*, 410 F.3d 1337, 1340 n.1 (11th Cir. 2005), which stated "[w]hen a person is convicted of kidnapping, false imprisonment, or luring or enticing a child into a dwelling or conveyance, there must be a sexual component shown in addition to the predicate offense before designating that person as a sex offender." That statement, however, was merely dicta in a footnote and the court cited only *Raines v. State*, 805 So. 2d 999, 1003 (Fla. Dist. Ct. App. 2001), for that proposition. Because the Eleventh Circuit relied on a case which we disagree with for reasons explained below, and engaged in no substantive analysis of either equal protection or substantive due process concerns as they relate to this case, we decline to address it.

minor, without any showing of a sexual element or motivation, violated guarantees of equal protection or substantive due process. *See Raines v. State*, 805 So. 2d 999, 1003 (Fla. Dist. Ct. App. 2001) (defining "sexual offender" to include defendants "convicted of false imprisonment" and requiring defendant to register where "it is clear that the predicate crime is totally devoid of a sexual component" violates equal protection rights because not rationally related to state's "interest in protecting the public from sexual offenders"); *see also State v. Small*, 833 N.E.2d 774, 782 (Ohio Ct. App. 2005) ("absent evidence that [defendant] committed the kidnapping of the minor victim with sexual motivation, denominating defendant a 'sexually oriented offender' is not rationally related to a legitimate state interest" of "alert[ing] citizenry to the presence of sex offenders within their midst" and thus violates substantive due process); *ACLU of N.M. v. City of Albuquerque*, 137 P.3d 1215, ¶ 25 (N.M. Ct. App. 2006) (city's stated purpose of statutes requiring registration of persons convicted of "sex offenses," "which is the 'protection of the victims and potential victims of sex offenders' is not furthered by the inclusion of crimes that are not sexually motivated" and defendants' equal protection and substantive due process rights violated).

¶17 The most notable distinction between those cases and this one is that the registration statutes of those states utilize sex-related language to define either who must register or the offenses requiring registration. *See* Fla. Stat. § 943.0435(h)(a)(I) (defining those convicted of offenses requiring registration as "[s]exual offender"); Ohio Rev. Code. Ann. 2950.01(A) (defining offense requiring registration as "[s]exually oriented offense"); N.M. Stat. Ann. § 29-11A-3(H), (I) (defining those who must register as "sex offender" and offense requiring registration as "sex offense"). Although Arizona's article 3 is denominated "Registration of Sex Offenders and Offender Monitoring," none of the statutes in the article categorically define the offenses or those required to register in any such terms. *See* §§ 13-3821 through 13-3829; *see also* A.R.S. § 1-212 ("headings to sections . . . do not constitute part of the law").

¶18 Coleman's argument, and reliance on these cases, therefore asks this court to read a limitation—a finding of sexual

motivation—into the statute which is not present on its face, something we will not do. *See Cicoria v. Cole*, 222 Ariz. 428, ¶ 15, 215 P.3d 402, 405 (App. 2009). Section 13-3821 is titled generally "Persons required to register," and includes three offenses which are not necessarily sex-related: kidnapping and unlawful imprisonment of a minor by a non-parent, and "[u]nlawful age misrepresentation." § 13-3821(A)(1), (2), (20). The plain language of the statute therefore contradicts Coleman's interpretation and instead demonstrates the legislature, in fact, intended to require all those convicted of certain non-sex-related offenses to register.

**¶19** Given the high risk that sexual assault occurs during the commission of unlawful imprisonment of a minor and its high rates of recidivism, the legislature could "have rationally decided that, on balance, it is important to warn the public and law enforcement about those criminals, like [Coleman], who falsely imprison a minor, regardless of whether the State can prove a sexual component."[4] *State v. Smith*, 780 N.W.2d 90, ¶ 31 (Wis. 2010). "[E]nsuring [Arizona's] registration scheme is not under-inclusive" is rationally related to the state's legitimate interest in protecting its communities and aiding law enforcement. *Lowery*, 230 Ariz. 536, ¶ 17, 287 P.3d at 542; *see also Noble*, 171 Ariz. at 177, 829 P.2d at 1223; *see also Washburn v. Pima County*, 206 Ariz. 571, ¶ 28, 81 P.3d 1030, 1039 (App. 2003) ("A perfect fit is not required; a statute that has a rational basis will not be overturned 'merely because it is not made with mathematical nicety, or because in practice it results in some inequality.'"), *quoting Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 566, 789 P.2d 1061, 1067 (1990).

**¶20** Furthermore, assuming arguendo that being required to register has labeled Coleman a "sex offender," the legislature could have concluded that label was appropriate regardless of a proven sexual motivation. Based on the Congressional history, the legislature could have found that "child abductions are often

---

[4]We note, however, that although the jury did not find sexual motivation beyond a reasonable doubt, there was testimony that, preceding the altercation, Coleman had said "I want to f--- your little girl."

precursors to sexual offenses." *Smith*, 780 N.W.2d 90, ¶¶ 30, 32. Or "that sexual assault occurs in many cases where there is no direct evidence of it—in cases where the victim is killed, or remains missing, or is unable or unwilling to recount his or her ordeal." *People v. Knox*, 903 N.E.2d 1149, 1153 (N.Y. 2009).

¶21 Similarly, it could have found that a defendant who abducted a child intended to sexually assault that child, but was prevented by intervening circumstances, such as his arrest or the child's escape. Or "that a child cut off from the safety of everyday surroundings is vulnerable to sexual abuse even if the offender's sexual desires are not the motive of the crime." *Id.* at 1153-54. Thus, even if the effect was to label Coleman a sex offender, it was rational for the legislature to classify him as such. *See id.* at 1154.

¶22 The majority of courts confronted with this same issue have concluded, as do we, that the registration requirement at issue here does not run afoul of substantive due process or equal protection guarantees. *See, e.g., Rainer v. State*, 690 S.E.2d 827, 829-30 (Ga. 2010) (registration requirement for defendant's conviction of false imprisonment of a minor did not violate substantive due process); *Johnson*, 870 N.E.2d at 426 (holding that the inclusion of "aggravated kidnapping of a minor by a nonparent" in sex offender registration act not violative of substantive due process "regardless of whether [the offender's] conduct was sexually motivated"); *Moffitt v. Commonwealth,* 360 S.W.3d 247, 255-57 (Ky. Ct. App. 2012) (requirement of registration for certain offenses against minors, regardless of a sexual component, did not offend substantive due process); *Knox*, 903 N.E.2d at 1153-54 (neither substantive due process nor equal protection violated by requiring those convicted of unlawful imprisonment or kidnapping of minor to register as sex offenders); *Smith*, 780 N.W.2d 90, ¶ 36 (requiring defendant to register as a sex offender following his conviction for false imprisonment of a minor rationally related to government interest in protecting public and did not violate defendant's right to due process or equal protection); *People v. Bosca*, 871 N.W.2d 307, 356 (Mich. Ct. App. 2015) (inclusion of false imprisonment on sex offender registration statute not violation of substantive due process). We agree with the reasoning of those decisions.

¶23 Accordingly, we conclude that requiring Coleman to register based on his conviction for unlawful imprisonment of a minor who is not his child without a finding that it was committed with sexual motivation does not violate either equal protection guarantees or substantive due process. It does not shock our conscience or interfere with rights that are implicit in the concept of ordered liberty. *Martin*, 195 Ariz. 293, ¶ 66, 987 P.2d at 800. The trial court thus did not err in ordering Coleman to register pursuant to § 13-3821(A)(1).

## Disposition

¶24 For the foregoing reasons, we affirm Coleman's convictions, sentences, and order to register.